ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **SUCESIÓN DE JORGE EDUARDO GONZÁLEZ RODRÍGUEZ, et als. y CORPORACIÓN AGRÍCOLA AMOROS**<br><br>Apelados<br><br>v.<br><br>**JOSÉ MIGUEL RODRÍGUEZ RIVERA**<br><br>Apelante | KLAN202300718 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Guayama**<br><br>Civil Núm.:<br>**G AC2017-0010**<br><br>Sobre:<br>Deslinde y Reivindicación |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de febrero de 2024.

Comparece ante nos el señor José Miguel Rodríguez Rivera (señor Rodríguez Rivera o apelante) y solicita la revisión de la *Sentencia Sumaria* emitida el 13 de julio de 2023, notificada el 14 de julio de 2023, por el Tribunal de Primera Instancia, Sala Superior de Guayama. Por virtud del dictamen apelado, el foro *a quo* declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por la Sucesión de José Eduardo González Rodríguez y la Corporación Agrícola Amorós (Sucesión González Rodríguez o apelados), ordenó el deslinde y la reducción de cabida de la Finca 15,072.

Oportunamente, la Sucesión González Rodríguez presentó su alegato en oposición, con cuyo beneficio resolvemos confirmar el dictamen apelado.

**I.**

El 24 de enero de 2017, la Sucesión González Rodríguez y la Corporación Agrícola Amorós presentaron una *Demanda* en la cual alegaron ser titulares del predio ubicado en la Calle Sansón D-37,

Urb. El Vigía, Guayama, PR 00785, solicitaron el deslinde por haber una confusión de linderos, y la reivindicación del terreno.[1] Además, solicitaron la devolución de los terrenos ocupados según el deslinde realizado por el agrimensor Carmelo Sierra, y el pago de $25,000.00 en concepto de honorarios de abogados. El predio constituye la finca 13,922, denominada El Salitral, el cual colinda por el norte con la finca 15,072 la cual es propiedad del señor Rodríguez Rivera.

El 28 de marzo de 2017, el señor Rodríguez Rivera presentó su *Contestación a Demanda* en la cual negó las alegaciones contenidas en la demanda e incluyó una reconvención. Mediante la presentación de la reconvención, arguyó que era titular en pleno dominio de la totalidad del inmueble en virtud de prescripción adquisitiva o usucapión. Particularmente, alegó que conforme surgía de la Escritura Número 3 *de Compraventa y Constitución de Hipoteca* (Escritura Núm. 3) del 27 de marzo de 2014, el inmueble en cuestión fue adquirido por éste, de sus padres, el señor Enrique Rodríguez Narváez y la señora Myrna Iris Rivera Ortiz, quienes a su vez adquirieron la titularidad sobre dicho predio conforme la Escritura Número 76 de *Cancelación y Pagaré Hipotecario y Compraventa* (Escritura Núm. 76) del 22 de diciembre de 2023. Enfatizó que sus padres y el titular original del mismo a título de usucapión, el señor Homero Droz, habían ostentado la posesión del

---

[1] Surge de la Escritura Número 3 de *Compraventa y Constitución de Hipoteca* del día 27 de marzo de 2014, que la descripción registral del terreno es la siguiente:

> **RÚSTICA**: Parcela marcada con el número dos de la Manzana número dos de la Manzana número uno en el plano de parcelación de la Comunidad Rural Puerto Jobos del término de Guayama, Puerto Rico, con una cabida superficial de mil ciento ochenta y nueve punto treinta y tres metros cuadrados.
>
> En lindes por el Norte, con la Calle A, en una distancia de cuarenta y cuatro punto cero ocho metros. Por el Sur, con terrenos del Bosque Forestal del Departamento de Recursos Humanos. Por el Este, con la parcela número tres en una distancia de treinta y ocho punto cincuenta y cuatro metros. Por el Oeste, con la parcela número uno-A en una distancia de dieciocho punto setenta y siete metros.
>
> Contiene una casa de dos plantas construida en bloques de cemento y hormigón armado, propia para vivienda.

bien desde el año 1960 ininterrumpidamente, en concepto de dueños y concurriendo en ello la buena fe, de forma pública y pacíficamente a título de dueño durante esos años. Finalmente, asegura que se le ha perturbado su posesión, enviándole cartas y entrando en su propiedad de forma ilegal y sin autorización.

En respuesta, el 10 de abril de 2017, la Sucesión González Rodríguez presentó su contestación a la reconvención. Mediante su comparecencia, negaron que el señor Rodríguez Rivera adquirió la propiedad invadida mediante prescripción adquisitiva, pues este no había presentado evidencia documental suficiente para probar sus alegaciones.

Luego de varios trámites procesales, el 22 de febrero de 2022, las partes presentaron un *Informe de Conferencia Preliminar Entre Abogados.* El 7 de marzo de 2022, se celebró la *Conferencia con Antelación al Juicio*, en la cual se determinó que el juicio se celebraría desde el 27 al 30 de junio de 2022.[2]

El 1 de junio de 2022, la Sucesión González Rodríguez presentó *Moción de Sentencia Sumaria.* Sostuvieron que a pesar del tiempo transcurrido y de un dilatado y extenso descubrimiento de prueba, el señor Rodríguez Rivera no logró aportar prueba alguna, fuera de lo que comprende su testimonio, que sustentara las alegaciones de adquisición del predio ocupado mediante usucapión en ambas modalidades. Además, aseguraron que el señor Rodríguez Rivera no tenía como probar que tuvo la posesión contínua del predio invadido por 30 años. Adujo que, procedía se dictara sentencia sumaria a su favor, pues no habían hechos sustanciales y materiales en controversia.

A tales efectos, el TPI emitió una *Resolución* en la cual dejó sin efecto el señalamiento del Juicio en su fondo y concedió al señor

---

[2] El TPI mediante *Orden*, pautó la fecha de la Conferencia con Antelación al Juicio para el 7 de marzo de 2022, mediante videoconferencia.

Rodríguez Rivera un término para exponer su posición sobre la sentencia sumaria presentada por la Sucesión González Rodríguez.

El 18 de agosto de 2022, el señor Rodríguez Rivera presentó su *Oposición a Moción de Sentencia Sumaria* en la cual alegó que la moción de sentencia sumaria radicada por la Sucesión González Rodríguez es una tardía, pues no cumplió con la Regla 36.1 de las de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.1. Asimismo, arguyó que existiendo controversias fácticas relacionadas a la titularidad del terreno, sus colindancias y la prescripción adquisitiva, no podía disponerse del caso por la vía sumaria.

Luego de evaluar las comparecencias de las partes, el 13 de julio de 2023, el TPI emitió *Sentencia Sumaria*, en la cual, entre otras cosas, declaró Ha Lugar la mocion de sentencia sumaria presentada por la Sucesión González Rodríguez y ordenó el desline de los 3,652 metros cuadrados de la Finca 15,072 y estableció que los mismos pertenecen a la Finca 13,992 (El Salitre) perteneciente a la sucesión. Además, ordenó la reducción de la cabida de la finca del señor Rodríguez Rivera de los 1,189.33 metros cuadrados descritos en la Escritura Núm. 3. Cónsono con lo anterior, el TPI formuló las siguientes determinaciones de hechos de las cuales no existe controversia, que, por la pertinencia de las mismas, se transcriben a continuación:

1. El señor Enrique Rodríguez Narváez y de su esposa, la señora Myrna Iris Rivera Ortiz, adquirieron la finca 15,072, del señor Homero Droz Pérez y Jeanette Bristol Ramos, mediante la Escritura Núm. 76 de 22 de diciembre de 2003.
   RÚSTICA: Parcela marcada con el número dos de la manzana número uno en el plano de parcelación de la comunidad rural Puerto Jobos del barrio Jobos del término municipal de Guayama con una cabida superficial de mil ciento ochenta y nueve punto treinta y tres metros cuadrados.
   En lindes por el Norte con la calle A, con una distancia de cuarenta y cuatro punto cero ocho metros. Por el Sur con terrenos del Bosque Forestal del Departamento de Recursos Naturales. Por el Este con parcela

número tres con una distancia de treinta y ocho punto cincuenta y cuatro metros. Por el Oeste con parcela número uno A con una distancia de dieciocho punto sesenta y siete metros.

2. El predio de terreno en controversia y cuya extensión es de 3,652.0857 metros cuadrados, colinda por el sur con la finca 15,072, y no aparece incluido como parte de esta.

3. La Escritura Núm. 76, no establece hecho alguno de traspaso sobre el predio de terreno en controversia y cuya extensión es de 3,652.0857 metros cuadrados, en exceso de los 1,189.33 metros cuadrados que constituyen la finca 15,072.

4. El señor José Miguel Rodríguez Rivera, adquirió de su padre, el señor Enrique Rodríguez Narváez y de su madre, la señora Myrna Iris Rivera Ortiz, la finca número 15,072, mediante la Escritura Núm. 3, de Compraventa y Constitución de Hipoteca del día 27 de marzo de 2014, otorgada ante el Notario Público Arnaldo Sánchez Recio.

5. Surge de la escritura Núm. 3, que la descripción del inmueble adquirido por el Demandado es la siguiente:

   En lindes por el Norte con la calle A, con una distancia de cuarenta y cuatro punto cero ocho metros. Por el Sur con terrenos del Bosque Forestal del Departamento de Recursos Naturales. Por el Este con parcela número tres con una distancia de treinta y ocho punto cincuenta y cuatro metros. Por el Oeste con parcela número uno A con una distancia de dieciocho punto sesenta y siete metros.

6. El Notario Público Arnaldo Sánchez Recio, **le advirtió al Demandado y a los vendedores, otorgantes de la Escritura Núm. 3, sobre la conveniencia de llevar a cabo un estudio registral del inmueble**, pero estos aceptaron continuar con la compraventa sin haberse efectuado el mismo. Así se desprende del contenido del párrafo ONCE de la Escritura Núm. 3, veamos.

   **ONCE**: Los comparecientes entienden, reconocen y aceptan que no se ha realizado un estudio registral; expresa que conoce la situación registral actual de la propiedad, y que acepta otorgar la presente escritura sin que se haya realizado un estudio de título. Advertí a los comparecientes, y así lo reconocen y entienden, sobre la conveniencia de acreditar el estado registral de las cargas mediante la expedición de una certificación del Registro de la Propiedad, o de comprobarlo directamente examinando los libros del mismo. De igual forma, reconocen los comparecientes que la realización de un estudio registral no cierra las puertas del Registro de la Propiedad y que pueden existir cargas o títulos presentados o inscritos con posterioridad al presente instrumento, por muy reciente que sea la certificación o el estudio registral realizado.

7. La Escritura Núm. 3, no establece hecho alguno de traspaso sobre el predio de terreno en controversia y cuya extensión es de 3,652.0857 metros cuadrados, en exceso de los 1,189.33 metros cuadrados que constituyen la finca 15,072.

8. **El Demandado tiene un título válido sobre el inmueble identificado como finca 15,072**.

**9. El Demandado no tiene un título válido sobre el predio de terreno en controversia y el cual excede la cabida de la finca 15,072 por 3,652.0857 metros cuadrados.**

10. El Demandado comenzó a residir en la propiedad desde el año 2007, mientras la propiedad continuaba siendo propiedad de sus padres. Esto fue aceptado por el propio Demandado durante su deposición del 5 de febrero de 2018.

11. La Escritura Núm.3, establece que la propiedad adquirida por el Demandado colinda por el sur con terrenos del Bosque Forestal del Departamento de Recursos Naturales. Esto es un error.

12. El terreno colindante por el sur de la propiedad adquirida por el Demandado es parte de la finca 13,992, denominada El Salitral. Así lo dejó saber el Departamento de Recursos Naturales mediante Moción Informativa del 13 de agosto de 2019.

**13. Mediante carta del 14 de agosto de 2019, el Departamento de Recursos Naturales y Ambientales, informó no tener objeción en cuanto a la presente demanda, entre otras cosas, debido a que el Demandante había provisto un título válido sobre el terreno en controversia.**

14. Desde que el Demandado comenzó a residir en el inmueble, finca 15,072, mientras esta seguía siendo propiedad de sus padres, hasta que adquirió la misma mediante compraventa, habían transcurrido aproximadamente tres años.

15. Desde que el Demandado adquirió la finca 15,072, mediante compraventa, hasta la radicación de la presente Demanda, habían transcurrido aproximadamente dos años y diez meses.

(Énfasis nuestro).

Inconforme con la determinación del TPI, el 14 de agosto de 2023, el señor Rodríguez Rivera acudió ante esta Curia y alegó que el foro primario cometió el siguiente error:

El TPI abusó de su discreción y erró como cuestión de Derecho al emitir sentencia sumaria sin llevar a cabo la inspección ocular previamente [ordenada] y soslayando la existencia de varias controversias sobre los hechos medulares del caso adecuadamente replicadas por el demandado apelante Rodríguez en su escrito en oposición al escrito en solicitud de sentencia sumaria radicado por la parte demandante apelada.

El 18 de agosto de 2023, emitimos *Resolución,* a los fines de conceder 20 días a la parte apelada para fijar su posición sobre el

recurso. El 26 de septiembre de 2023, la Sucesión González Rodriguez presentó su *Alegato en Oposición a Recurso de Apelación.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Serrano Picón v. Multinational Life Insurance Company*, 2023 TSPR 118, resuelto el 29 de septiembre de 2023; *Oriental Bank v. Caballero García*, 2023 TSPR 103, resuelto el 23 de agosto de 2023; *Ferrer et. al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010). Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Municipio Autónomo de San Juan y otros*, 2023 TSPR 95, resuelto el 24 de julio de 2023.

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA

Ap. V, R. 36.1; *Universal Insurance Company y otro v. Estado Libre Asociado de Puerto Rico y otros*, 2023 TSPR 24, resuelto el 7 de marzo de 2023. La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión*, supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas*, supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda

si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión*, supra, págs. 215-216. (Citas omitidas.)

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas*, supra, el Tribunal Supremo estableció el estándar de revisión que debe

utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Finalmente, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Meléndez González v. M. Cuebas*, supra, pág. 119.

**III.**

En su único señalamiento de error, el señor Rodríguez Rivera aduce que el TPI abusó de su discreción al emitir la *Sentencia Sumaria* apelada sin llevar a cabo una inspección ocular, y al ignorar que existía controversia sobre los hechos medulares del caso. Según el señor Rodríguez Rivera, aún existe controversia en cuanto a la titularidad del terreno en controversia, el cual solo puede dilucidarse en un juicio plenario, a través de la presentación de prueba. Enfatiza que, de haberse llevado a cabo el juicio en su fondo, éste podría haber establecido cada uno de los elementos requeridos para adquirir la titularidad del predio mediante prescripción adquisitiva.

Por su parte, la Sucesión González Rodríguez alega que el señor Rodríguez Rivera ha provocado dilaciones en el proceso para poder operar un negocio de aparcamiento de lanchas y reparación de motores náuticos, sin contar con algún permiso que le autorice a ello. Además, aduce que de la mensura realizada por el agrimensor Sierra, surge claramente que el predio invadido, localizado en la

colindancia sur de la finca 15,072, la cual es propiedad del señor Rodríguez Rivera, tiene una mensura de 3,652.0857 metros cuadrados y que el referido predio es parte de la finca 13,992, El Salitral, la cual es propiedad de la Sucesión. A su vez, alega que el apelante no ha logrado presentar prueba en el foro primario que contravenga la mensura realizada por el agrimensor Sierra.

Surge del expediente que la Sucesión González Rodríguez solicitó el deslinde, la reivindicación y la devolución de un predio de terreno de 3,652.0857 metros cuadrados, el cual colinda por el norte con la finca 15,072 (propiedad del apelante) y por el sur con el Mar Caribe. La solicitud se acompañó de un plano de mensura realizado por un agrimensor, en el cual se delimitó el área de cada una de las fincas.

Durante el proceso, surgió una confusión en cuanto a la porción del terreno que está en controversia, pues el señor Rodríguez Rivera alegaba que pertenecía al Departamento de Recursos Naturales y Ambientales (DRNA). Sin embargo, el DRNA compareció al pleito mediante *Moción Informativa* en donde aseguró que no era dueño del predio invadido el cual localizaba al sur de la Finca 15,072, la cual pertenece al señor Rodríguez Rivera.

Surge también del expediente, que el TPI nombró al agrimensor Rafael Díaz Ramos, quien realizó dos informes en los cuales concluyó que el predio objeto de controversia (el terreno con una cabida de 3,652.0857) es propiedad de la Sucesión González Rodríguez y que el señor Rodríguez Rivera lo había invadido.[3]

De la prueba documental presentada en el TPI, la Escritura Núm. 76 de *Cancelación de Pagaré Hipotecario y Compraventa* (Escritura Núm. 76), suscrita el 22 de diciembre de 2003, describe la propiedad que fue adquirida por el Sr. Enrique Rodríguez Narváez

---

[3] Las fechas de los informes son: 10 de diciembre de 2018 y 28 de mayo de 2019. Véase Exhibit F de la *Apelación,* págs. 76-113.

y la Sra. Myrna Iris Rivera Ortiz, por parte del Sr. Homero Droz Pérez

y la Sra. Jeanette Bristol Ramos. La misma dispone lo siguiente:

> "RÚSTICA: Parcela marcada con el número dos de la manzana número uno en el plano de parcelación de la comunidad rural Puerto Jobos del barrio Jobos del término municipal de Guayama con una cabida superficial de **mil ciento ochenta y nueve punto treinta y tres metros cuadrados.**"

(Énfasis nuestro).

Asimismo, la Escritura Núm. 3 sobre *Compraventa y Constitución de Hipoteca*, suscrita el 27 de marzo de 2014, también describe la propiedad que fue adquirida por el señor Rodríguez Rivera, por parte del Sr. Enrique Rodríguez Narváez y la Sra. Myrna Iris Rivera Ortiz. El primer renglón de la escritura describe la finca de la siguiente manera:

> "RÚSTICA: Parcela marcada con el número dos de la Manzana número uno en el plano de parcelación de la Comunidad Rural Puerto Jobos del Barrio Jobos del término municipal de Guayama, Puerto Rico, con una cabida superficial de **Mil Ciento Ochenta y Nueve Punto Treinta y Tres Metros Cuadrados.**"

(Énfasis nuestro).

El señor Rodríguez Rivera aduce que en las referidas escrituras se sustenta su justo título sobre el bien en controversia. Sin embargo, no le asiste la razón. Las escrituras que el señor Rodríguez Rivera presentó como evidencia, solo validan que la posesión que éste ostenta es sobre los 1,189.33 metros cuadrados de su finca, la cual se describe en las referidas escrituras. En ninguna sección o cláusula de la escritura se hace mención de la titularidad de la porción de terreno en controversia a favor del señor Rodríguez Rivera, que consta de los 3,652.0857 metros cuadrados en exceso de la cabida que constituye la finca 15,072.

En cuanto a la alegación del señor Rodríguez Rivera de que adquirió el terreno por prescripción adquisitiva tampoco le asiste la razón. Como ya expuesto anteriormente, para establecer que se ha adquirido la posesión mediante prescripción adquisitiva es

necesario cumplir con unos requisitos que expone nuestro ordenamiento jurídico. Los requisitos son:

En este caso, el señor Rodríguez Rivera debía demostrar que poseyó el terreno en controversia por treinta años, de manera ininterrumpida, pacifica y en concepto de dueño para poder alegar que es poseedor y poder alegar la titularidad del mismo. Sin embargo, surge del expediente que éste adquirió la posesión del terreno el 27 de marzo de 2014, y a la fecha de la presentación de la *Demanda,* éste no cumplía con uno de los requisitos esenciales para poder levantar la alegación de su titularidad por prescripción adquisitiva. Además, sus padres adquirieron la propiedad para el 22 de diciembre de 2003, por lo que aun considerando la fecha en que estos adquirieron la propiedad, no se cumple con el término requerido de treinta años para poder adquirir la posesión por prescripción adquisitiva.

Establecido lo anterior, debemos recalcar que los tribunales apelativos no intervendrán con las determinaciones del foro apelado a menos que la parte que las cuestione demuestre que medió pasión, prejuicio, parcialidad o error manifiesto. En el caso ante nuestra consideración no atisbamos error en la determinación del TPI. El foro primario examinó la *Demanda,* los escritos en oposición, así como la sentencia sumaria presentada por la Sucesión González Rodríguez y la documentación sometida como parte del proceso y determinó que el señor Rodríguez Rivera no posee suficiente evidencia para demostrar que ostenta la titularidad sobre la porción del terreno en controversia, por medio de la prescripción adquisitiva.[4]

---

[4] Adviértase que lo resuelto por esta Curia, no implica que hayamos determinado que el terreno en controversia forma parte o no y/o que invade la zona marítimo terrestre, pues dicha controversia no se encuentra ante nos.

Por lo tanto, somos del criterio que el foro primario no erró, ni abusó de su discreción en su determinación, ni en el manejo del caso, por lo que procede confirmar la *Sentencia Sumaria* apelada.

**IV.**

En virtud de todo lo anteriormente expresado, confirmamos la *Sentencia Sumaria* emitida por el TPI.

Lo acordó este Tribunal y lo certifica la Secretaría del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones